UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:16-CV-00145-LLK

LISA M. DOSS             PLAINTIFF

v.

ANDREW SAUL, Commissioner of Social Security             DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for Social Security disability benefits. The fact and law summaries of Plaintiff and Defendant are at Dockets Number ("DN") 18 and 23. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [DN 11].

Because the Administrative Law Judge's ("ALJ's") decision is supported by substantial evidence and Plaintiff's five arguments are unpersuasive, the Court will AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

**Procedural History**

Plaintiff filed her complaint in 2016. [DN 1]. Because the administrative record was incomplete due to inaudibility of the administrative hearing, the parties agreed to a remand pursuant to Sentence 6 of 42 U.S.C. § 405(g) for a new decision and further administrative proceedings, which the Court granted. [DN 9, 10]. The Court retains jurisdiction following a Sentence 6 remand. *Sec'y of Health & Human Servs. v. Schaefer*, 509 U.S. 292, 297 (1993).

In March 2019, the ALJ issued the Commissioner's final decision [Administrative Record ("AR") at 23], and, in October 2019, the Commissioner filed a motion to reopen, which the Court granted. [DN 13, 14].

**The ALJ's finding that Plaintiff's headaches are non-severe was not reversible error.**

First, Plaintiff argues that the ALJ erred in finding her headaches to be non-severe, or vocationally insignificant. [DN 18 at 2-3 referencing AR at 7-8].

Plaintiff carries the burden of proving that she has a severe, or vocationally significant, impairment satisfying the durational requirement. *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012) (citing *Her v. Comm'r*, 203 F.3d 388, 391 (6th Cir.1999)). To meet this burden, she must show that she suffers from an impairment that has lasted or is expected to last for a continuous period of at least twelve months and that the impairment significantly limits her ability to do basic work activities. 20 C.F.R. §§ 404.1509, 404.1521. The regulations define the phrase "basic work activities":

> (b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include --
>
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

The ALJ found that brain MRIs in 2006 and 2011 were normal except for some sinusitis; in December 2011, Plaintiff was prescribed Ultram for her headaches, which helped; in October 2012, the headaches were described as stable with medication; in August 2013, a headache specialist opined there was a psychiatric / somatic overlay; in February 2014, Plaintiff experienced only one headache; in October 2014, a brain MRI was negative; and in August 2015, the headaches were described as under control with

medication. [AR at 7, 569, 633, 645, 727, 740-42, 813, 1402, 1468, 2211]. In light of the foregoing evidence, the ALJ's finding of non-severe headaches was supported by substantial evidence.

Even if the ALJ's finding was **not** supported by substantial evidence, the error was harmless because Plaintiff has not proven that the limitations acknowledged by the ALJ due to her **other** impairments failed to accommodate the limitations, if any, caused by her headaches. Specifically, the ALJ found Plaintiff can have no more than occasional exposure to vibration, extremes of temperature, dusts, gases, odors, and other factors known to trigger headaches; and she is limited to simple routine tasks with no need to sustain concentration, persistence, and pace beyond two hours at a time. [AR at 10]. Additionally, the vocational expert (VE) clarified that the jobs Plaintiff would be required to perform allow one absence per month and being off task ten percent of the time. [AR at 135-36]. In other words, the ALJ found that Plaintiff has several severe impairments and, in determining her limitations, "consider[ed] the limiting effects of all impairment(s), even those that are not severe." 20 C.F.R. § 404.1545(e). Therefore, "whether the ALJ characterized [a particular impairment, e.g., Plaintiff's headaches] as severe or non-severe ... is 'legally irrelevant' and does not amount to [reversible] error." *Hedges v. Comm'r*, 725 F. App'x 394, 395 (6th Cir. 2018) (citing *Maziarz v. Sec'y*, 837 F.2d 240, 244 (6th Cir. 1987)).

**The ALJ's not listing Plaintiff's PTSD among her severe impairments was not reversible error.**

Second, Plaintiff argues the ALJ erred in not listing post-traumatic stress disorder (PTSD) among her severe, or vocationally significant, impairments. [DN 18 at 3 referencing AR at 6]. The ALJ did, however, list bipolar disorder as a severe impairment. [AR at 6]. At worst, the ALJ's not listing PTSD as a severe impairment was harmless error because Plaintiff has neither alleged nor proven that the limitations acknowledged by the ALJ due to bipolar disorder do not accommodate any limitations due to PTSD. *See Hedges v. Comm'r*, 725 F. App'x 394, 395 (6th Cir. 2018).

3

**Plaintiff failed to prove her degenerative disc disease satisfies Listing 1.04(A).**

Third, Plaintiff argues that the ALJ erred in finding her degenerative disc disease does not satisfy Listing 1.04(A). [DN 18 at 5-6 referencing AR at 8].

According to the ALJ, "[t]he medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required under listing 1.04." [AR at 8]. While these findings correspond to subsections (A), (B), and (C) of Listing 1.04, Plaintiff challenges only the ALJ's findings with respect to Listing 1.04(A).

Listing 1.04(A) provides that the following disorder of the spine is per-se disabling:

1.04. Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Listing 1.04(A).

Plaintiff carries the burden of proving that the clinical criteria of a listed impairment are satisfied, and this burden is construed strictly because the Listing represents an automatic screening in of an impairment as per-se disabling (independently of any other medical or vocational factor). *See Sec'y v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of [a listed impairment's] criteria, no matter how severely, does not qualify."); *Elam ex rel. Golay v. Comm'r*, 348 F.3d 124, 125 (6th Cir. 2003) ("It is insufficient that a claimant comes close to meeting the requirements of a listed impairment.").

Plaintiff does arguably show that she suffers from "nerve root compression" as contemplated by Listing 1.04(A). *See* Plaintiff's fact and law summary, DN 18 at 5 referencing AR at 876 (July 2014 MRI showing "[a]t L5-S1, there is ... disc bulge ... with ... minor mass effect on the right great[er] than left lateral recess, expected location S1 root"). However, Plaintiff identifies no page reference to the administrative

4

record showing the existence of "neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and … positive straight-leg raising test (sitting and supine)."[1]  The Commissioner asserts that his review of the administrative record shows normal motor, sensory, and/or reflex function on several occasions.  [DN 23 at 11 referencing AR at 857, 865, 1269, 1456, 1460, 1463, 1470, 1488].  The Court declines to search (on its own initiative, going beyond what Plaintiff herself cites) 2,348 pages of the administrative record in search of clinical evidence supporting or undermining Plaintiff's Listing 1.04(A) argument.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.").

**Plaintiff failed to prove her bipolar disorder satisfies Listing 12.04.**

Fourth, Plaintiff argues that the ALJ erred in finding her bipolar disorder does not satisfy Listing 12.04 because, according to the ALJ, the severity of impairment does not satisfy the "paragraph B" criteria. [DN 18 at 6-7 referencing AR at 9-10].  To satisfy the "paragraph B" criteria of Listing 12.04, Plaintiff must show that her impairment results in "at least one extreme or two marked limitations in [four] broad area[s] of function which are:  understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves."  [AR at 9]. The ALJ found that Plaintiff is only moderately limited in all four areas.  *Id.*  Plaintiff, however, challenges only the ALJ's finding that she is moderately limited in her ability to concentrate, persist, or maintain pace. [DN 18 at 7].  Therefore, Plaintiff must show that she has an extreme inability to concentrate, persist, or

---

[1] A simple word-search of Plaintiff's fact and law summary reveals no reference to any "distribution," "motor" loss, or "atrophy" (besides simply quoting Listing 1.04(A)).  Plaintiff does state that "[a] treating orthopedist found positive right-side straight leg raise testing."  [DN 18 at 5 referencing AR at 878].  However, there is no indication that straight-leg raising was positive "sitting and supine."

maintain pace. "An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis." [AR at 9].

Plaintiff identifies no page reference to the administrative record showing an extreme inability to concentrate, persist, or maintain pace.[2] The Court declines to search (on its own initiative) 2,348 pages of the administrative record in search of clinical evidence supporting Plaintiff's Listing 12.04 argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997).

**The ALJ's finding that Plaintiff can perform some light work had an adequate medical basis.**

Fifth and finally, Plaintiff argues that the ALJ's physical residual functional capacity (RFC) findings, which limit Plaintiff to a range of light work, is not supported by substantial evidence because they do not correspond to the findings of any single physician. [DN 18 at 8-9 referencing AR at 10]. The argument is unpersuasive for two reasons. First, Plaintiff acknowledges that the ALJ's physical RFC findings correspond "closely" to those of Adnan Dervishi, M.D., and that, in fact, the ALJ's findings are **more** restrictive than Dr. Dervishi's findings. [DN 18 at 9 referencing AR at 10, 1439]. Therefore, this is not a case in which "no physician opined that [Plaintiff] was able to perform … light work." *Rudd v. Comm'r*, 531 F. App'x 719, 728 (6th Cir. 2013). Second, even if no physician opined that Plaintiff can perform light work, "the ALJ is charged with the responsibility of determining the RFC based on [his] evaluation of the medical and non-medical evidence." *Id.* Therefore, "to require the ALJ to base [his] RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's

---

[2] A simple word search of Plaintiff's fact and law summary reveals no reference to any "extreme" limitation (besides simply quoting Listing 12.04) or to an inability to function "independently," "appropriately," "effectively," on a "sustained" basis. Plaintiff faults the ALJ for not discussing occasional findings of tearfulness (Tr. 528, 950, 1986), pressured speech, (Tr. 525, 582), tired appearance (Tr. 1938), depressed affect (950), 'profound memory loss' on neurologist examination (Tr. 1456); complaints of paranoid thoughts and hallucinations (Tr. 1919, 1379, 1996); assessed mania on physical consultative exam (Tr. 540); and counselor's assessment of poor to no ability to maintain attention and concentration (Tr. 667)." [DN 18 at 7]. However, these occasional limitations do not prove the existence of an extreme inability to concentrate, persist, or maintain pace (satisfying the 12-month duration requirement).

statutory responsibility to determine whether an individual is disabled.'"  *Id.* (quoting Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *2).

## Order

Because the ALJ's decision is supported by substantial evidence and Plaintiff's five arguments are unpersuasive, the Court hereby AFFIRMS the Commissioner's final decision and DISMISSES Plaintiff's complaint.

May 4, 2020

Lanny King, Magistrate Judge
United States District Court